Filed 6/30/26  Marriage of Allen CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of DARINKA ALLEN and ERIC ALLEN | |
| DARINKA ALLEN,<br><br>        Appellant,<br><br>v.<br><br>ERIC ALLEN,<br><br>        Respondent. | A173233<br><br>(Contra Costa<br>Super. Ct. No. MSD-15-01381) |

Appellant Darinka Allen appeals from a post-dissolution judgment that divided assets between her and her former spouse, respondent Eric Allen.[1] She challenges two aspects of the judgment, one regarding the post-separation rental value of the marital home and the other regarding the valuation of a business the couple started.  We remand for further proceedings.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Eric and Darinka were married in July 2001, and they purchased a house in Hercules in 2003.  The couple separated in January 2008, and

---

[1] We refer to the parties by their first names in the interest of clarity.

Darinka moved out of the house.  Eric petitioned to dissolve the marriage in 2015, and a dissolution was entered later that year.  When it dissolved the marriage, the trial court reserved jurisdiction to decide how marital assets were to be divided.  It took several years, and the involvement of two different trial court judges, to finally decide these issues.

This appeal involves two assets that may have generated income or increased in value during the years between the parties' separation and the final dissolution: the rental value of the Hercules house and the value of a business that the couple had started.  The business was called Fine Entertainment, which operated a subsidiary called "Interracial Kink."  The business hosted "adult parties," initially in venues such as hotels, but later in the Hercules house.  Around 6 to 10 couples and 5 to 10 single men typically attended the parties.  Couples and single men were asked to make a donation, but single women were not.  Photos of Darinka were used to market the business.

The trial court held two hearings regarding the disposition of marital assets.  The first was held before Judge Hiramoto in 2019.  A 23-page statement of decision was filed at the end of the year, and a judgment was entered in January 2020.  The judgment included the following two provisions that are relevant to the issues in this appeal:

> "[Eric] shall pay [Darinka] one-half of the fair market rental value of the Hercules home from January 1, 2008 to present.  [Eric] testified the fair market rental value was $3100 per month.  The court reserves the right to receive further evidence from the parties on this issue before determining the final amount owed to [Darinka]."

> "The business known as "Interracial Kink" . . .  is community property. . . . ¶ [It] shall be valued and divided as a community asset. The court reserves jurisdiction over the valuation and division of this business."

Eric appealed from the judgment, and this court affirmed. (*Allen v. Allen* (March 10, 2023, A159554) [nonpub. opn.].)

In February 2024, the second hearing on reserved issues was held, this one before Judge Young. Darinka testified and provided additional evidence about the couple's business. She admitted that "we got complaints from people," "maybe [from] neighbors because it was in a residential area." She also admitted that "[t]he house was raided by the police numerous times" "[b]ecause of complaints of prostitution." When asked if she thought the parties were illegal, Darinka said, "I think so." She later clarified that while she did not believe the business was illegal at the time, "[n]ow that I look back, I look to a different view."

After hearing Darinka's testimony, the court continued the matter and asked Darinka to brief several issues, including the extent to which the court was bound by Judge Hiramoto's prior orders and whether the couple's business was an illegal operation. Ultimately, Judge Young ruled she was bound by Judge Hiramoto's prior orders,[2] but she set the value of the business at $0 on the basis that it was an "illegal operation." No explanation was given on the nature of the illegality.

The parties agreed that, rather than proceeding with the hearing, the trial court would resolve the remaining issues on the pleadings and written submissions. Darinka filed additional briefing and materials, which included a "Supplemental Declaration [of] Additional Facts" prepared by Eric.[3] Most

---

[2] Generally, a trial court judge in a case is bound by rulings entered by previously assigned judges in the case. (See *In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1248–1249.)

[3] The record is unclear whether Eric filed the declaration directly with the court, as the copy in our record is included in Darinka's submissions and has no clerk's file stamp.

of the briefing concerned issues unrelated to the two at issue in this appeal. Neither party provided further evidence on the post-separation value of the couple's business.

In February 2025, Judge Young issued her final ruling. The court found the "the fair market rental value of the house to be zero dollars." It noted it had heard "testimony from [Darinka] which led to a finding that the business was an illegal venture and valued it at zero dollars. [Darinka] also testified that during the time [Eric] occupied the home, it had been raided by the Federal Bureau of Investigations[4] at least two times that she was aware of due to the nature of the [] business being run out of the home."

Darinka filed objections to the ruling, but they were not ruled upon. A judgment was entered on March 7, 2025.

## II.
### DISCUSSION

On appeal, Darinka filed a brief, but Eric did not. She contends the trial court erred by assigning no post-separation values for the rental value of the home and the value of the business. We conclude that the appellate record does not support the court's rulings, and we therefore remand for further proceedings.

We begin by discussing the applicable standards of review. Trial courts have considerable discretion to determine the value of community property. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603.) They also "possess 'broad discretion to determine the manner in which community property is awarded in order to accomplish an equal allocation.' " (*In re Marriage of Gréaux & Mermin* (2014) 223 Cal.App.4th 1242, 1250.)

---

[4] Darinka actually testified that it was the police (not the FBI) that had raided the house.

4

Appellate courts review trial court orders concerning the valuation and apportionment of community property for abuse of discretion. (*In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 276.) "Under that standard, we would reverse only if considering all the relevant circumstances, the court has ' " ' "exceeded the bounds of reason" ' " ' or ' " 'no judge would reasonably make the same order in the same circumstances.' " ' " (*In re Marriage of Honer* (2015) 236 Cal.App.4th 687, 694.) We accept the trial court's factual determinations as true if supported by substantial evidence. (*Ibid.*; *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966.) If the facts are undisputed and the issues on appeal present questions of law, the standard of review is de novo. (*In re Marriage of Schleich* 8 Cal.App.5th at p. 276.)

1. *The trial court's finding that the post-separation rental value of the Hercules property was $0 was not supported by the evidence.*

Generally, all forms of income produced by an asset in a marital dissolution take on the character of the property from which they flow. Thus, "rents, issues, and profits" are community property if derived from community assets and separate property if derived from separate assets. (Fam. Code § 770(a)(3); *Hicks v. Hicks* (1962) 211 Cal.App.2d 144, 152–153.) Here, the parties do not (and cannot) challenge Judge Hiramoto's determinations in the January 2020 judgment that the post-separation rental value of the Hercules property was community property and that any such value was to be equally shared between the parties. (See *Conservatorship of Whitley* (2007) 155 Cal.App.4th 1447, 1462 [" '[A] judgment or decree among parties to a lawsuit resolves issues as among them' "].)

Thus, we are concerned in this appeal only with whether the trial court in its 2025 judgment improperly assigned no rental value to the property.

5

When valuing post-separation community property, a shifting burden of proof applies. The party not in control of the asset need present only a prima facie showing of the asset's "existence and value." (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1258.) If such a showing is made, the "burden of proof shifts to the [party in control of the asset] to rebut the showing or prove the proper disposition or lesser value of the[] asset[]." (*Id.* at p. 1267.)

Here, Eric had possession and was in control of the Hercules home from the date of the parties' separation until he vacated the premises in March 2020. Thus, Darinka—the party not in control of the asset—was initially required to present only a prima facie showing of the asset's existence and value. She more than satisfied this burden. Indeed, Judge Hiramoto essentially found that the burden was satisfied by recognizing in the January 2020 judgment that Eric had "testified that the fair market rental value was $3100 per month." Specifically, Eric testified in the first hearing that he rented the Hercules property for $3,100 per month while he spent a year in Thailand and the Philippines. He also testified that starting in 2019 he occasionally ("once every other month or so") rented out rooms on Airbnb and received $70 to $80 per night per room for doing so. On average, he received $1,167 each month.

Because Darinka satisfied her initial burden, the burden of proof shifted to Eric "to rebut the showing or prove the proper disposition or lesser value of the[] asset[]." (*In re Marriage of Prentis-Margulis & Margulis, supra,* 198 Cal.App.4th at p. 1267.) Rather than analyzing the valuation with this burden in mind, Judge Young simply determined "the fair market rental value of the house to be zero dollars," because the judge had heard

6

"testimony from [Darinka] which led to a finding that the business was an illegal venture." The court did not further explain its ruling.

We fail to understand how the nature of the couple's business in hosting adult parties, even if illegal, caused the rental value of the property to be zero during the post-separation period, especially since Eric testified that he had in fact rented the property during that period. Thus, we remand for the trial court to further explain or modify its determination that the Hercules property had no rental value. If the court on remand determines that the property had a rental value, it shall order Eric to pay Darinka one-half as required by the January 2020 judgment.

2. *The record does not allow us to adequately review the trial court's determination that the business's value was $0 on the basis that it constituted an illegal operation.*

As we have mentioned, during the second hearing, the court heard testimony from Darinka that Fine Entertainment or Interracial Kink "may be a business that is illegal or has some illegalities involved." The court stated it was "concerned about valuing an illegal business. And if the business is in fact illegal, then the value will be $0." The court allowed the parties to brief the issue. In its final judgment, the court set the value of the business at $0 on the basis that it was an "illegal operation," but it did not explain or analyze the nature of the illegality. On the record before us, we cannot conclude that the ruling did not constitute an abuse of discretion.

To begin with, nothing in our record convinces us that the business was illegal. True enough, Darinka testified that she had come to the belief that the adult parties were illegal. She testified that party attendees were asked to give a donation, instead of being charged a fee, because she understood from Eric that doing so would preclude claims of illegality, such as charges of

7

"prostitution." And she testified that the house had been raided by the police due to "complaints of prostitution."

None of this, however, establishes that the business was actually involved in prostitution or pimping. As Darinka points out in her appellate brief, "prostitution" is defined as "any lewd act between persons for money or other consideration." (Pen. Code, § 647, subd. (b)(4).) A "pimp" is defined as "any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution." (Pen. Code § 266h, subd. (a); *Wooten v. Superior Court* (2001) 93 Cal.App.4th 422, 427.) The record here shows that the couple's business hosted events for consenting adults who, after giving a donation or paying an entrance charge, were given the opportunity to participate in, or observe, sexual acts with other consenting attendees. No evidence was presented that any attendee was compensated for participating or was required to participate in sexual activity.

While we cannot conclude on the record before us that the business involved prostitution or pimping, we of course recognize that it may have been unlawful for other reasons, such as being in violation of local zoning or other ordinances regulating businesses in residential areas or regulating adult businesses. But we have no indication from the record that the trial court was concerned with this type of illegality or that it was the basis of the court's ruling.

Furthermore, and in any event, we are unconvinced that any potential illegality of the business justified its zero valuation for purposes of dividing the marital estate. "California law appears to recognize that there may be community 'property' interests in assets (or the proceeds thereof) acquired during marriage through a spouse's unlawful criminal activity."

8

(Hogobloom & King, Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶ 8:109, p. 8-45, citing *Q-Soft, Inc. v. Superior Court* (*Mahallaty*) (2007) 157 Cal.App.4th 441, 449–450; see also *In re Marriage of Shelton* (1981) 118 Cal.App.3d 811, 817 [party cannot assert illegality as a defense to dividing gains from gambling with community funds, at least when the gains are an "accomplished fact"].)

We therefore remand for the trial court to further explain or modify its determination that the business had no value. In doing so, we recognize that even if the court concludes that the business was not valueless due to illegality concerns, it may nonetheless find that the value was little or nothing. For one thing, Eric testified in the first hearing that "[a]fter [Darinka] left" and "due to the economic situation," the "income [from] parties decreased significantly . . . [and] dwindled down to very little." In addition, the valuation may be affected because the record reflects that any work done in connection with the business after the parties were separated was performed by Eric and not Darinka. " ' "[W]hen the hard work and actions of one spouse *alone* and after separation . . . greatly increases the 'community' estate which must then be divided with the other spouse," ' " trial courts have discretion to value any portion of community " ' "assets at a date after separation and prior to trial to accomplish an equal division of the community property . . . and the quasi-community property in an equitable manner." ' " (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1290; see also Fam. Code, § 2552.) We leave these and any other issue involving the valuation of the business and any allocation between the parties to be resolved by the trial court.

9

## III.
### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.  Darinka is awarded her appellate costs.

_____

Humes, P. J.

WE CONCUR:


_____

Banke, J.


_____

Langhorne Wilson, J.

*In re the Marriage of Allen*  A173233

11